William EDWARDS, Plaintiff,

v.

B. WHITE et al., Defendants.

Civ. No. 79–450.

United States District Court,
M. D. Pennsylvania.

Oct. 17, 1979.

William Edwards, pro se.

Richard G. Fishman, Keystone Legal Services, Inc., State College, Pa., for plaintiff.

Arvin Maskin, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

Edwards, an inmate at the State Correctional Institution at Rockview, Pennsylvania, filed this action pursuant to 42 U.S.C. § 1983 alleging that the defendants White, Caskey, Day, Wilson, McCullough, Beard and Mazurkiewicz violated his constitutional rights by subjecting him to disciplinary sanctions because of his alleged possession of a petition seeking the removal of a correctional officer at Rockview. On June 12, 1979, Defendants filed a motion for summary judgment accompanied by a brief. On June 27, 1979, Plaintiff filed a crossmotion for summary judgment accompanied by a brief. On that same day, Plaintiff filed a motion to strike affidavits that the Defendants had submitted in support of their motion for summary judgment. On August 3, 1979, Defendants filed briefs in opposition to Plaintiff's motions for summary judgment and to strike Defendants' affidavits. On August 23, 1979, Plaintiff filed reply briefs with respect to both motions. The filings on August 3, 1979 and August 23, 1979 were timely pursuant to an order dated August 16, 1979 which extended the time in which to file briefs. For the reasons which follow, the Court will deny Defendants' motion for summary judgment and will grant Plaintiff's motion in part and deny it in part.

On March 14, 1979, Defendant White and three other correctional officers discovered a paper in Edwards' possession which Defendants maintain was a petition addressed to William B. Robinson, Commissioner of Corrections for the Commonwealth of Pennsylvania. In view of the fact that Plaintiff denies that the paper was a petition, the Court will set forth the contents of the paper in substantially the form in which it exists.

"Subj: Mr. Jeffrey Beard, Deputy Superintendent for Treatment.

TO: Mr. William B. Robinson, (Commissioner)

FROM: The Residents at State Correctional Institution,

As residents at S.C.I.R., We, the undersigned, Request the removal of Mr. Jeffrey Beard from the administrative staff of S.C.I.R. We welcome the opportunity for our representative's (sic) to discuss our reasons for this request."

Beneath this paragraph were three columns, each containing 21 blank lines. At the time the Defendants confiscated the paper from Edwards, no signatures had been affixed thereto.

Edwards was charged with conspiracy to disrupt normal institution routine, possession of contraband, and indirectly threatening an employee. On March 14, 1979, Edwards was given a copy of the misconduct report which set forth the three charges as well as a brief description of the circumstances surrounding the seizure of the paper. A hearing on the charges was held on March 16, 1979 before a Hearing Review Committee (HRC). Edwards admitted having the paper in his possession, but maintained that he had found it in the laundry, had picked it up, placed it back on a bench, and began to do his work in the laundry. On the basis of correctional officer White's report that he took the petition from Edwards' hand, the HRC found Edwards guilty of all three charges. The HRC imposed a penalty of confinement in disciplinary custody cells for a period not to exceed six months, a change in custody from outside honor status to disciplinary custody,

loss of honor status for 180 days, and loss of varsity athletic privileges for six months.

On March 26, 1979, the HRC's finding was reviewed by the Program Review Committee (PRC). The PRC was composed of defendant Beard, who was the object of the petition found in Edwards' possession, and defendants McCullough and Wilson. The PRC sustained the HRC's finding of guilt but reduced Edwards' punishment. He was released from disciplinary custody on March 27, 1979 and his status was improved to "limited outside." On March 27, 1979, defendant Mazurkiewicz, reviewed the PRC's decision and sustained its decision to affirm the HRC's finding.

Edwards' complaint attacks practically every facet of the disciplinary procedure. He alleges that the HRC did not have sufficient evidence before it to convict him of the three charges, that defendant Beard's presence on the PRC denied him an impartial tribunal, that the Defendants could not constitutionally prohibit the possession and circulation of a petition, and that the Defendants' regulations purporting to prohibit the possession of a petition are unconstitutionally vague. Edwards also alleges that he was not provided with adequate notice of the charges he would face at the HRC hearing and that Defendants' regulations against petitioning abridged his right to access to the Courts.

The Court is in agreement with a number of Edwards' contentions. It is the Court's view that Beard's presence on the PRC denied Edwards an impartial tribunal, that there are not sufficient facts appearing in the record of the HRC hearing to justify Edwards' conviction for conspiracy to disrupt institution routine and for threatening an employee and that the Defendants' regulations prohibiting the possession of a petition are unconstitutionally overbroad. The Court, therefore, will issue an order enjoining Defendants from enforcing their present regulation against petitions.

■ Although Edwards claims that he did not receive adequate notice of the charges he was to answer before the HRC, the Court concludes that the notice provided to Edwards complies with the requirements of *Wolff v. McDonnell*, 418 U.S. 539, 563–64, 94 S.Ct. 2963, 2978–2979, 41 L.Ed.2d 935 (1974). The notice Edwards received on March 14, 1979 informed him of the charges and their underlying factual basis. This is all *Wolff* requires. There was no need for the notice to contain information relating to the Defendants' reasons for prohibiting petitions or relating to a threatened strike by correctional officers. While these factors may have motivated the Defendants to charge Edwards, they did not form the factual basis of the charge and would not have aided Edwards in his defense if he had been aware of them. In order to escape punishment, Edwards had to disprove the allegations levelled against him that he possessed the petition, that he conspired to disrupt the institution, and that he threatened Beard. The information provided by the notice was sufficient for that purpose.

■ The Court finds, however, that the disciplinary procedure was rendered constitutionally defective by Beard's membership on the PRC which reviewed the finding of the HRC. Affidavits submitted by Defendants Beard and McCullough and by Reverend Frederick H. Bigelow, who was present at the PRC meeting, state that Beard did not participate in the PRC's decision. Plaintiff, in his motion to strike affidavits, claims that this attempt to contradict form JBC–141 D Part III, on which the PRC decision is recorded and which shows that Beard was a member of the PRC, violates the parol evidence rule. The parol evidence rule is inapplicable. Whatever application the parol evidence rule may have outside the field of contracts, it is the Court's view that the affidavits do not contradict the statement in Form JBC–141 that Beard was a member of the committee. They merely show that he did not participate in the committee's decision. Plaintiff's motion to strike the affidavit of Reverend Bigelow will be denied.

The undisputed fact that Beard was present at the PRC hearing of Edwards' appeal and during its deliberations is sufficient to invalidate the disciplinary proceed-

ings. In *Braxton v. Carlson*, 483 F.2d 933, 936 (3d Cir. 1973), the Court of Appeals for this Circuit held that disciplinary proceedings resulting in segregation must comply with the due process provisions of the constitution. In *Meyers v. Alldredge*, 492 F.2d 296, 305 (3d Cir. 1974), the Court of Appeals held that due process requires that disciplinary proceedings be conducted before an impartial tribunal. In *Myers*, the Court of Appeals held that an associate warden who was substantially involved in the dispute which gave rise to the disciplinary proceedings in question could not serve on the disciplinary committees considering the claims at issue. Beard was substantially involved in the incident giving rise to Edwards' disciplinary proceeding because he was the individual named in the petition and because one of the charges Edwards faced was that of threatening Beard. Accepting as true Defendants' contention that Beard did not participate in the PRC's decision, the Court nonetheless concludes that his presence on the committee during the hearing and his attendance during deliberations in and of itself compromised the impartiality of the PRC. For this reason the Court concludes that Edwards' constitutional rights were violated and the Court will direct that his misconduct convictions be expunged from his prison records.

Even if expungement of all the misconduct convictions were not ordered, the findings relating to conspiracy to disrupt normal institution prison routine and making an indirect threat to an employee must be deleted from Edwards' record for lack of evidence. The Court recognizes that factual findings of a prison disciplinary committee must be respected by the Court as long as they are not arbitrary or capricious. *See Aikens v. Lash*, 514 F.2d 55 (7th Cir. 1975), *vacated* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976), *modified*, 547 F.2d 372 (7th Cir. 1976); *Covington v. Sielaff*, 430 F.Supp. 562, 564 (N.D.Ill.1977). A disciplinary proceeding is not arbitrary or capricious if there is any basis in fact to support the disciplinary committee's finding. *Jackson v. McLemore*, 523 F.2d 838, 839 (8th Cir. 1975). The Court will not consider the credibility of witnesses nor weigh conflicting evidence presented to the committee. *Jones v. ICC*, 374 F.Supp. 706, 711, n.5 (W.D.Va.1974).

However, the only evidence before the HRC on the disruption charge was the paper and Defendant White's testimony that he recovered it from Edwards' hand. This was a sufficient factual basis to support a finding that Edwards possessed the paper. The content of the paper and its form was sufficient evidence to support the HRC's conclusion that the paper was a petition. There was, however, absolutely no evidence that Edwards had conspired with anyone even to circulate the petition much less disrupt the normal institutional routine. Similarly, the fact that the petition requests the removal of Defendant Beard and assuming that this is a threat to his professional career and livelihood is not evidence of a threat to Beard's safety. The information in Mazurkiewicz's affidavit relating to conditions that existed at the time the petition was taken from Edwards and indicating that correctional officials received information that Edwards had the petition was not reported as a basis for the HRC's action. The Court, therefore, concludes that there is no factual basis to support a finding that Edwards conspired to disrupt normal institutional routine or that he indirectly threatened Beard.

The Court concludes that Edwards' conviction for possession of contraband cannot stand for an additional reason. Edwards submits that even if the paper were a petition, the prison officials could not constitutionally punish him for possessing it. It is the Court's view, however, that prison officials could constitutionally prohibit the possession of a petition.

The Court recognizes that a prison regulation prohibiting the circulation of a petition infringes upon Edwards' First Amendment rights of association. In *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), the United States Supreme Court held that First Amendment

associational rights may be curtailed "whenever the institution officials, in the exercise of their informed discretion, reasonably conclude that such associations . . . possessed the likelihood of disruption to prison order or stability or otherwise interfere with the legitimate penological objectives of the prison environment." Regulations infringing First Amendment associational rights will be upheld unless the Plaintiff can show conclusively that the officials were wrong in their view that the restriction would reduce the likelihood of disruption to prison order. As recently as May 14, 1979, the United States Supreme Court reiterated its position that:

"prison administrators . . . should be accorded wide–ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. 'Such considerations are peculiarly within the province and professional expertise of correction officials and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to those considerations, courts should ordinarily defer to their expert judgment in such matters.' "

*Bell v. Wolfish*, 441 U.S. 520, 547–548, 99 S.Ct. 1861, 1878–1879, 60 L.Ed.2d 447 (1979) (citations omitted).

With this standard of review in mind, the Court turns to the reasons supporting the rule against possession of petitions. First, Defendants fear that the circulation of petitions within the inmate population would place pressure on inmates to sign petitions and that this might lead to violence. It is the Court's view that a regulation prohibiting circulation of petitions among inmates is a reasonable response to a reasonable fear. A regulation prohibiting the circulation of petitions is not an exaggerated response to a perceived danger. *See Main Road v. Aytch*, 565 F.2d 54, 57 (3d Cir. 1977).

Plaintiff's attempt to analogize a restriction against the circulation of petitions to

cases involving censorship of incoming or outgoing mail is not persuasive. All of the mail cases including *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Cavey v. Levine*, 435 F.Supp. 475 (D.Md.1977); and *Hopkins v. Collins*, 548 F.2d 503 (4th Cir. 1977), involved only restrictions relating to what mail inmates could send out of the institution or they could receive in the institution. In this case, however, Defendants' legitimate concern is not with the content of the petition but with the process of petitioning which they reasonably could conclude generated a risk of violence within the institution. That concern is not present in the mail cases where the content of an inmate's mail does not cause any friction among other inmates. Defendants' concern was with the group activity involved in circulating a petition which might cause "additional and unwarranted problems and frictions" in the operation of the prison. See *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2539–2540, 53 L.Ed.2d 629 (1977).

A regulation which prohibits petitioning does not severely restrict Edwards' ability to voice his grievances against the conditions at Rockview or interfere with his access to the courts. Nothing in a regulation against a petition prevents Edwards from mailing his statement directly to Commissioner Robinson and certainly does not prevent him from filing an action in a state or federal court if he believes his rights have been violated.

Edwards maintains that a rule which prohibits petitioning prevents him from expressing a grievance against Defendant Beard. The existence of a grievance system within the prison is conclusive evidence to the contrary. What Defendants found objectionable in Edwards' petition was that the circulation of a petition, regardless of its contents, would pose a threat to the security of the institution. The fact that the contents of the petition in this case might have increased the danger of the violence which Defendants feared is one more reason why a regulation against peti-

tioning is a reasonable one. For these reasons, the Court concludes that prison officials could constitutionally prohibit the circulation of petitions among the inmate population.

The Court must now determine whether the possession of a petition can constitutionally be grounds for disciplinary action. The Court recognizes that the possession of a petition does not pose the dangers that circulating a petition does. As Plaintiff argues, a piece of paper that may be in the form of a petition is indistinguishable from another paper containing the same information in the form of a letter so long as neither is circulated. The Court is of the view, however, that it is a reasonable exercise of discretion on the part of prison officials to prohibit the possession of a petition. The Court does not believe that prison officials must wait before acting until someone begins to circulate a petition, and thereby causes the friction which the rule against petitioning is designed to prevent. *See Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 132–33, 97 S.Ct. 2532, 2541–2542, 53 L.Ed.2d 629 (1977).

█ Defendants contend that the petition was contraband as defined by § 7 of the inmate handbook, a copy of which Edwards received on November 27, 1978. The inmate handbook defines contraband as follows:

> "You are prohibited from having in your possession or under your control any item which was not (a) issued to you by the Bureau of Corrections, (b) purchased by you in or through the approved inmate commissary procedures, (c) otherwise authorized for you by the institution.
>
> \*    \*    \*    \*    \*    \*
>
> Some examples of contraband are unauthorized drugs, obscene pictures, obscene photographs or obscene literature, money, alcoholic beverages, poisons, weapons, keys, and items or materials being used out of an authorized area, etc."

Plaintiff contends that this regulation is unconstitutionally vague and that Edwards could not reasonably be expected to know

that the possession of a petition was proscribed. Edwards cannot avail himself of the vagueness argument. In 1972 Edwards was found guilty of misconduct while a prisoner at the State Correctional Institution at Huntingdon because of his possession of a petition. Although Edwards, in an affidavit, contends that he did not believe petitions were proscribed based on his understanding of the regulations he received upon his arrival at Rockview in November, 1978, his prior misconduct conviction for possession of a petition at least imposed a duty on Edwards to inquire as to the propriety of a petition. The Court also notes that since Edwards denies that the petition was his, it is difficult to see how any vagueness of the regulation was prejudicial since according to Edwards the petition was not his. The Court is troubled by Edwards' attempt to argue that he was misled by the regulations while maintaining that he did not in fact have the petition. The Court, therefore, will reject Edwards' argument that the regulation banning the possession of a petition is unconstitutionally vague.

█ In spite of the Court's conclusion that Edwards cannot raise a vagueness claim, the Court concludes that Defendants cannot prohibit the possession of petitions based on the present definition of contraband. In *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974), the United States Supreme Court set forth the test to be applied to determine the validity of prison regulations affecting first amendment rights.

> "First, the regulation . . . must further an important or substantial governmental interest unrelated to suppression of expression . . . Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential for the protection of the particular government's interest involved."

In *Procunier*, the Supreme Court found unconstitutional prison regulations which authorized the censorship of prisoners mail that contained statements that "unduly complain" or "magnify grievances," or which were "otherwise inappropriate."

**14**

These regulations were invalidated not on vagueness grounds but on grounds that they were overbroad. It is the Court's view that a prison regulation which purports to ban the possession of anything not specifically issued or authorized by prison officials is constitutionally overbroad when applied to the possession of a petition.

 The Court recognizes that *Jones* and *Bell* are unequivocal in recognizing that prison officials have wide discretion in choosing methods to insure the security of prisons. It is the Court's view, however, that this discretion does not include the power to issue overbroad regulations particularly when the dangers of petitions and petitioning are foreseeable and the Defendants could easily publish clearly drawn regulations prohibiting the activity with respect thereto. *See Meyers v. Alldredge*, 492 F.2d 296, 311 (3d Cir. 1974). Indeed, in both *Jones* and *Bell*, the Court was reviewing the constitutionality of clearly drawn regulations, not a regulation of the type present in this case. Of the regulations at issue in *Jones*, the Supreme Court said: "... the regulations are drafted no more broadly than they need be to meet the perceived threat." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 133, 97 S.Ct. 2532, 2541–2542, 53 L.Ed.2d 629 (1977). For the foregoing reasons, the Court will issue an order enjoining Defendant Mazurkiewicz from enforcing the present regulation on contraband which prohibits the possession of petitions. Since the Court has determined that none of Edwards' misconduct convictions are constitutionally valid, Edwards may prove at trial the amount of damages, if any, to which he is entitled. Defendants also will have the opportunity at trial to establish their defenses to personal monetary liability. The Court concludes that Mazurkiewicz's affidavit is not sufficient to establish immunity from damages by reason of Mazurkiewicz's good faith. The affidavit merely states that none of the Defendants acted with malice and that usual procedures were followed. The Court finds that the information in the affidavit relating to Mazurkiewicz's belief that Edwards was going to circulate the petition is

relevant to the issue of good faith and will deny Edwards' motion to strike the affidavit. The affidavit, however, does not address the question of Mazurkiewicz's knowledge of the defects of the contraband regulation in the disciplinary procedures. His knowledge of these facts is crucial to a determination if he acted in good faith. None of the other defendants submitted affidavits on this issue of their good faith. Defendants will have the opportunity at trial to establish their defenses to Edwards' claim for damages. The issues of damages and the Defendant's defenses to claims for monetary damages are the only issues which remain to be tried.

The Court will direct the Clerk of Court to assign this case to Judge Richard Conaboy for trial in exchange for the case of *Kimble v. Hewitt*, Civil 78–1088, recently received from him for trial.

An appropriate order will be entered.