Joseph **VINES**

v.

Edward **HOWARD, Sr., et al.**

Civ. A. No. 86–5225.

United States District Court, E.D. Pennsylvania.

Oct. 5, 1987.

Joseph Vines, pro se.

Mary Butler, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This action is predicated on 42 U.S.C. § 1983. Plaintiff, an inmate at Graterford Prison, is proceeding *pro se*. Plaintiff claims that the kinship between a correctional officer and the hearing examiner who conducted a disciplinary hearing violated plaintiff's due process rights. Presently before this court is plaintiff's motion for summary judgment pursuant to Fed.R. Civ.P. 56 and defendants' response. For the reasons set forth below, the motion is granted in part and denied in part.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate at the State Correctional Institution at Graterford, filed this lawsuit asserting causes of action under 42 U.S.C. §§ 1983, 1985, and 1986. I will construe the complaint to name the defendants in their official and individual capacities. The original defendants were Hearing Examiner Edward Howard, Sr. ("Howard, Sr."), Captain Clark, Correctional Officer Edward Howard, Jr. ("Howard, Jr."), Correctional Officer Judge, and Correctional Officer Telipiski. Plaintiff's Complaint at ¶¶ 5–9. Each of the defendants was an official at Graterford at the time of the complaint. *Id.*

Plaintiff claims that defendants denied him due process on two separate occasions. *Id.* at ¶¶ 14, 17–21. First, plaintiff asserts that he was falsely accused of violating strip search procedures by Correctional Officer Howard, Jr. *Id.* at ¶ 12. Following the accusation, a disciplinary hearing was convened. Hearing Examiner Howard, Sr. presided over the disciplinary hearing. *Id.* at ¶ 10. Howard, Jr. testified at the hearing. *Id.* at ¶ 16. Hearing Examiner Howard, Sr. found that plaintiff violated the strip search procedure. Plaintiff asserts that the father-son relationship between Correctional Officer Howard, Jr. and Hearing Examiner Howard, Sr. prevented a fair review of the misconduct charge. As a result of the father-son relationship, plaintiff argues that he was denied due process. Plaintiff's Memorandum of Law at 2–5 (attached to Plaintiff's "Traverse").

Plaintiff also had asserted that his due process rights were violated when he was issued a second misconduct charge. *Id.* at ¶ 17. This misconduct concerned an incident involving plaintiff and several correctional officers during which comments and jests were exchanged. *Id.* at ¶ 17.

In an earlier memorandum opinion, this court dismissed plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 as frivolous pursuant to 28 U.S.C. § 1915(d). *Vines v. Howard,* 658 F.Supp. 34 (E.D.Pa.1987). This court also dismissed the claims against defendants Clark, Judge, Telipiski and Howard, Sr. relating to the second misconduct. *Id.* at 36–37. I permitted plaintiff to proceed with his claim under 42 U.S.C. § 1983 relating to the first misconduct and the disciplinary hearing adjudicated by Howard, Sr. *Id.* at 36–37.

With respect to the first misconduct charge and the subsequent disciplinary hearing, plaintiff has now filed a motion for summary judgment based on the absence of any issue of material fact. This motion and plaintiff's reply focus on defendant Howard, Sr.'s adjudication, not defendant Howard, Jr.'s initiation of the misconduct charge. Plaintiff claims that he is entitled to judgment as a matter of law. Plaintiff's Motion for Summary Judgment

at 2. In their response, defendants contest plaintiff's motion on the grounds that some of defendants' actions were in good faith pursuant to and in reliance upon valid state laws and regulations and that none of plaintiff's constitutional rights were violated. *See* Defendants' Response to Motion for Summary Judgment at ¶ 5. More specifically, defendants submit that their actions complied with Bureau of Correction Administrative Directives. *Id.* at ¶ 6.

## II. APPROPRIATE LEGAL STANDARD

■ A trial court may enter summary judgment if, after a review of the record, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates,* 595 F.Supp. 800 (E.D.Pa.1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the nonmoving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 883 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

■ The moving party must initially show an absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be discharged by "showing"— that is, by pointing out to the trial court— that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986). Fed.R.Civ.P. 56 mandates the entry of summary judgment where the nonmoving party fails to show that a genuine issue does exist with respect to an element for which the nonmoving party will bear the burden of proof at the trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir.1987). Rule 56 permits the nonmoving party to oppose a summary judgment motion by depositions,

answers to interrogatories, admissions on file, or affidavits, but not by the pleadings alone. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.

## III. THE PARTIES' ARGUMENTS

Plaintiff argues that the disciplinary hearing and subsequent penalty imposed violated plaintiff's due process rights because Howard, Sr. adjudicated the disciplinary hearing where the misconduct charge was initiated by his son and where his son testified about material facts. As a result of the consanguinity, plaintiff asserts that the objectivity of the misconduct hearing was tainted. Plaintiff's Complaint at ¶ 14; Plaintiff's Memorandum of Law at 5 (attached to the "Traverse"); Plaintiff's Reply Memorandum at 2–4.

Defendants, in reply, submit that plaintiff's misconduct hearing was impartial and that no impropriety existed. *See* Defendants' Response to Motion for Summary Judgment at ¶ 5. Defendants claim that Howard, Sr., convened the hearing on the morning of February 19, 1986, but was forced to discontinue the hearing until Howard, Jr. came on duty so that he could testify. *Id.* Upon reconvening, Howard, Jr. positively identified plaintiff and indicated that he was the only inmate to refuse to comply with strip search procedures on February 17, 1986. *Id.* Hearing Examiner Howard, Sr. then found that plaintiff had violated the search procedures. Based on the identification by his son and his determination that plaintiff violated the procedures, Howard, Sr. suspended plaintiff's visiting privileges for two weeks. *Id.* Defendants noted that, although the Bureau of Correction employs several hearing examiners, Howard, Sr. is the only hearing examiner presently assigned to Graterford. *Id.* Defendant Howard, Sr. also pointed to various Bureau of Correction regulations concerning disciplinary proceedings, BC–ADM 801, inmate visits, BC–ADM 812, and searches of inmate and cells, BC–ADM 203, and argue that their conduct comported with such regulations. *See* Exhibits C, D, E attached to Defendants' Response.

Defendants' response does not contravene any of the material allegations contained in plaintiff's complaint. Defendants did outline additional events surrounding the misconduct hearing, but these additional submissions concern various institutional regulations and the testimony at the disciplinary hearing. Defendants, however, do not dispute that Howard, Sr. and Howard, Jr. are father and son and concede that the kinship "gives the appearance of impropriety." Defendants' Response at ¶ 6. This case presents the following questions: (1) whether the defendants can be held liable under 42 U.S.C. § 1983 in either their individual or official capacities, (2) whether the misconduct hearing violated due process standards, and (3) whether or not the good faith defense attaches to defendants' actions.

## IV. LIABILITY

I have construed plaintiff's *pro se* complaint to name the defendants in both their individual and official capacities. The court will examine the distinctions that exist between individual and official liability and the type of relief that can be granted pursuant to each variety.

### A. *Individual Liability*

■ The issue of liability is closely related to the question of immunity. The general approach to the question of immunity in § 1983 suits against individuals is well established. Although § 1983 on its face fails to indicate any type of immunities, the courts have read the statute "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The initial inquiry is whether an official, sued in an individual capacity, can point to a common law counterpart to the privilege he asserts. *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). Even if such an immunity existed at common law, the court should next consider whether § 1983's history or purpose would exclude the same immunity in § 1983 actions. 467 U.S. at 920, 104 S.Ct. at 2824, 81 L.Ed.2d at 765.

The Supreme Court recently confronted the question of whether or not prison disciplinary committees should receive absolute immunity, as do judges,[1] or limited immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). *Cleavinger* concluded that a disciplinary committee should not receive absolute immunity in its review of prisoner misconduct charges. In *Cleavinger*, the institutional discipline committee was composed of an associate warden, a correctional supervisor, and a case manager. 474 U.S. at 194, 106 S.Ct. at 497, 88 L.Ed.2d at 510. While not rank and file correctional officers, the board members were prison employees and "direct subordinates of the warden who reviews their decision." 474 U.S. at 204, 106 S.Ct. at 502, 88 L.Ed.2d at 516.

> [T]he members of the committee, unlike a federal or state judge, are not "independent"; to say that they are is to ignore reality. They are not professional hearing officers, as are administrative law judges. They are, instead, prison officials, albeit no longer of the rank and file, temporarily diverted from their usual duties. *See Ward v. Johnson*, 690 F.2d [1098] at 1115 ([CA 4] 1982) (dissenting opinion). They are employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decision. They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment. The credibility determination they make often is one between a co-worker and an inmate. They thus are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee. *See Ponte v. Real*, 471 U.S. [491], 495, 85 L.Ed.2d 553, 105 S.Ct. 2192 [2195] (1985) (dissenting opinion). It is the old situational problem of the relationship between the keeper and the kept, a relationship that hardly is conducive to a truly adjudicatory performance.

*Id.* at 203–04, 106 S.Ct. at 502, 88 L.Ed.2d at 516. In the absence of absolute immuni-

ty, the Supreme Court determined that the members of the disciplinary committee should receive qualified immunity. Of course, qualified immunity is of no small consequence. The Court noted that disciplinary committee members could safeguard their actions and avoid liability by following the constitutional requirements of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

▪ I believe *Cleavinger* is applicable to the present case. Hearing Examiner Howard, Sr. is subject to institutional pressures similar to those which led the *Cleavinger* court to rule that the discipline committee should receive qualified, not absolute, immunity. Plaintiff alleges that Howard, Sr. was a former correctional officer and held the rank of captain. *See* Plaintiff's Complaint at ¶ 19; Plaintiff's Memorandum of Law in Support of Plaintiff's Traverse at p. 1. Howard, Sr. served as a correctional officer for 20 years. *Id.* Howard, Sr. adjudicates disciplinary charges in the very prison where he, himself, worked as a correctional officer. *Id.* Defendants have not disputed any of these allegations. In light of the above, I conclude that Howard, Sr. was not an independent factfinder. Therefore, in accordance with *Cleavinger*, Howard, Sr. shall be accorded qualified immunity.

▪ To be protected by qualified immunity, an official must establish that he acted in good faith, without intending to violate any of plaintiff's constitutional rights. Qualified immunity is defeated where the official *"knew or reasonably should have known"* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury...." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975) (emphasis added) *quoted in Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396, 409 (1982); *see*

---

**1.** *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 13 Wall

335, 20 L.Ed. 646 (1872).

*also Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24, 31 (1978). The constitutional right at issue must be clearly established. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. Quite recently the Supreme Court stated that the question of whether or not qualified immunity applies generally turns on the "objective legal reasonableness" of the action. *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *Anderson* minimized the import of inquiries into the official's subjective intent and concluded that the issue of qualified immunity could be resolved through a summary judgment motion. —— U.S. at ——, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.

At present, this court cannot resolve the question of qualified immunity. I note that neither side's briefs included a discussion of qualified immunity and, consequently, did not probe the question of whether the actions of Howard, Sr. were actions which a reasonable officer would have believed lawful. I believe further discovery on this issue to be appropriate. *See Anderson,* —— U.S. at ——, 107 S.Ct. at 3042 n. 6, 97 L.Ed.2d at 535 n. 6. To rule on this issue now would be to rule in a vacuum on an issue which the parties have not addressed. The determination of these questions is properly relegated to the trier of fact.

### B. *Official Liability*

Plaintiff has also sued Howard, Sr. in his official capacity. Accordingly, I must examine the relationship between the Eleventh Amendment and plaintiff's requested relief.

The Eleventh Amendment to the Constitution of the United States provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." It is well established that the Eleventh Amendment

bars suits not only when the state is the named party but also when the state is a real, substantial party. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662, 672 (1974). This immunity extends beyond the express language of the Eleventh Amendment itself, and includes suits in which a state is sued by its own citizen. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ An abrogation of immunity by Congress or a waiver of immunity by the state overcomes the Eleventh Amendment bar. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614, 621 (1976); *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360, 39 L.Ed.2d at 678. Neither abrogation is relevant to the present case.[2]

■ The Eleventh Amendment does not deprive this court of jurisdiction over actions involving allegedly unlawful state action. Under the rule announced in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may be able to enjoin allegedly unconstitutional state action by naming the responsible state official as a defendant and requesting that that officer be enjoined from further unconstitutional conduct. The Supreme Court later held that the rule of *Ex parte Young* applies only to prospective as opposed to retroactive relief. *Edelman,* 415 U.S. at 664, 94 S.Ct. at 1356, 39 L.Ed.2d at 673. *Edelman* recognized that an award of damages against a state officer in an official capacity "will obviously not be paid out of the pocket of [the officer]," 415 U.S. at 664, 94 S.Ct. at 1356, 39 L.Ed.2d at 672–673, but rather will "inevitably come from the general revenues of the State," 415 U.S. at 665, 94 S.Ct. at 1357, 39 L.Ed.2d at 673–674, a result the Court found contrary to the purposes of the Eleventh

2. First, the Supreme Court determined that § 1983 did not constitute a congressional abrogation of the state's immunity from suits seeking retroactive damages. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (sequel case to *Edelman* ). Second, the state itself may waive its Eleventh Amendment

immunity; however, Pennsylvania has not waived its Eleventh Amendment immunity for the purposes of this lawsuit. *See* 42 Pa.C.S.A. §§ 8521, 8522; *see generally Helfrich v. Commonwealth of Pennsylvania, Dept. of Military Affairs,* 660 F.2d 88 (3d Cir.1981) (per curiam).

Amendment.[3]

This court is permitted to entertain plaintiff's request for injunctive relief, Plaintiff's Complaint at p. 6, if a constitutional violation is discovered. *See Edelman,* 415 U.S. at 677, 94 S.Ct. at 1362, 39 L.Ed.2d at 680–81.

## V. DUE PROCESS ANALYSIS

My analysis begins with the oft repeated statement that individuals retain constitutional protections even after they pass through the prison gates. "Hence, for example, prisoners retain the constitutional right to petition the Government for redress of grievances, *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); they are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment, *Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968); and they enjoy the protection of due process, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)...." *Turner v. Safley,* — U.S. —, 107 S.Ct. 2254, 2259–60, 96 L.Ed.2d 64, 75–76 (1987).

### A. *The Requirement of an Impartial Disciplinary Tribunal*

■ In the context of prison disciplinary proceedings, due process requires that the disciplinary tribunal be sufficiently impartial. *Meyers v. Alldredge,* 492 F.2d 296, 305–07 (3d Cir.1974); *see Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (disciplinary committee was sufficiently impartial so as not to violate due process); *see also Rhodes v. Robinson,* 612 F.2d 766, 773 (3d Cir.1979) (referring to *Meyers, supra* ); *United States ex rel. Silverman v. Commonwealth of Pennsylvania,* 527 F.Supp. 742, 747–48 (W.D.Pa.1981) ("A basic component of procedural fairness is a hearing before an objective and impartial tribunal."), *aff'd mem.,* 707 F.2d 1397 (3d Cir.1983).

In so holding, the Third Circuit Court of Appeals stated that the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." *Meyers,* 492 F.2d at 306. *Meyers* concerned a prison work stoppage and subsequent disciplinary action taken against members of a prisoners' committee involved in the work stoppage. During the course of the work stoppage, an associate warden had considerable contact with the prisoners' committee. Later, the same associate warden served on the disciplinary committee. The *Meyers* court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305–07.

Judge Muir reached a similar result in *Edwards v. White,* 501 F.Supp. 8 (M.D.Pa. 1979), *aff'd mem.,* 633 F.2d 209 (3d Cir. 1980). In *Edwards,* a prison guard accused the prisoner of possessing a petition which requested the removal of the deputy superintendent for treatment. The same deputy superintendent sat on the disciplinary tribunal which concluded that the prisoner was guilty as charged and ordered the prisoner confined to a disciplinary custody cell. 501 F.Supp. at 9. The court, referring to *Meyers,* determined that the presence of the deputy superintendent on the committee rendered it constitutionally defective. *Id.* at 10–11.

I will now turn to analyze whether or not Howard, Sr.'s adjudication of the disciplinary charge violated the requirement of an impartial tribunal. At the outset, I note that the resolution of the disciplinary charge below rested on the issue of credibility. The adjudicator was faced with the choice of believing the charging officer or the prisoner. In the present case, Howard, Sr. was faced with the choice of believing the testimony of a prisoner or the testimony of his own son. Second, I note that the *Meyers* prohibition has not been restricted to officials *present* when the supposedly improper activity took place. *See Ed-*

---

**3.** As discussed, *supra,* the Eleventh Amendment does not bar the imposition of money damages against state officials in their individual capacities.

*wards, supra* (court determined that prison official who was not present when petition was found but who was the target of the petition was involved with the circumstances underlying the charge and should not have served on disciplinary committee).

I believe that Howard, Sr.'s adjudication of the charge violated the *Meyers* prohibition and plaintiff's due process rights. Howard, Sr. was indeed personally involved with the circumstances underlying the charge. Howard, Sr.'s personal involvement stems from the fact that he is the father of Howard, Jr., the corrections officer who initiated the misconduct charge and who testified at the reconvened misconduct hearing. Kinship between the disciplinary adjudicator and the corrections officer who initiated the misconduct charge or who testifies at the disciplinary hearing irreparably taints the tribunal's impartiality.

### B. Balancing of Penological Interests

In examining whether or not certain prison regulations violate prisoners' constitutional rights the Supreme Court recently stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" and then set forth various factors to be considered in determining the reasonableness of the regulation. *Turner,* —— U.S. at ——, 107 S.Ct. at 2261, 96 L.Ed.2d at 79; *accord O'Lone v. Shabazz,* —— U.S. ——, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

Defendants' counsel, apparently, has attempted to proffer some penological interests to support Howard, Sr.'s position. Counsel notes that Howard, Sr. is the only hearing officer assigned to Graterford. Defendants' Response at p. 9. It is further submitted that other hearing officers would become burdened should Howard, Sr. have to disqualify himself from cases involving his son. *Id.* Lastly, counsel argues that Howard, Sr.'s disqualification in cases involving his son "would vest too much control in a prisoner to determine who will hear his misconduct charge." *Id.*

I disagree. Defendants' arguments do not rise to the level of valid penological interests. First, defendants admit that the Bureau of Correction employs other hearing examiners. Second, that Howard, Sr. is the only hearing examiner assigned to Graterford is of no consequence; the Bureau of Correction could assign another hearing examiner to Graterford to hear all disciplinary hearings or those simply involving Howard, Jr. Third, such a reassignment need not result in burdening the other hearing officers; Howard, Sr. could be assigned to fill the duties of the other examiner assigned to Graterford to comply with this opinion. Finally, requiring the disqualification of Howard, Sr. from cases involving Howard, Jr. would not give any control to the prisoner "to determine who will hear his misconduct charge." Rather, it simply insures that a close blood relative of Howard, Jr. is not involved in the determination of the prisoner's guilt or innocence.

In short, defendant has not demonstrated a "legitimate and neutral governmental interest," *see Turner,* —— U.S. at ——, 107 S.Ct. at 2261, which supports Howard, Sr.'s adjudication of cases involving Howard, Jr. Moreover, reassignment of Howard, Sr. will not result in a legally significant effect, *id.* ——, 107 S.Ct. at 2261–62, on Howard, Sr. Also, as discussed previously, ready alternatives, *id.* at ——, 107 S.Ct. at 2262, exist to the present situation in which Howard, Sr. adjudicates claims involving Howard, Jr. Accordingly, under the recently enunciated *Turner* standard, Howard, Sr.'s adjudication of cases involving Howard, Jr. is not reasonably related to any valid penological interest.

Therefore, I conclude that Howard, Sr.'s adjudication of the underlying disciplinary complaint involving Howard, Jr. violated due process.

### VI. REMEDIES

Plaintiff has requested injunctive relief against Howard, Sr. As previously discussed, *Ex parte Young* and *Edelman* permit injunctive relief against state officials in their official capacity. As I have determined that Howard, Sr.'s action violated due process, I will enjoin Howard, Sr. from sitting as a hearing examiner or on a disci-

plinary committee in any hearing in which his son, Howard, Jr., initiated the misconduct charge or is called as a witness.

Second, because plaintiff's due process rights were violated a new hearing regarding the strip search incident is required. In adhering to this requirement, the hearing examiner adjudicating the matter must be impartial and not related to anyone testifying at the hearing. Also, if plaintiff is again found guilty of this misconduct, plaintiff shall not receive a punishment greater than that originally imposed.

Third, plaintiff's claims against Howard, Sr. in his individual capacity shall be resolved by the finder of fact.

## VII. APPOINTMENT OF COUNSEL

██ I appoint counsel to plaintiff to proceed against defendants in their individual capacities. As indicated above, there still remains a question of whether qualified immunity protects Howard, Sr. Also, there remains the possibility of proceeding against Howard, Jr.

The Third Circuit Court of Appeals in examining the issue of appointment of counsel stated that appointment should be made "only ... upon a showing of special circumstances indicating the likelihood of substantial prejudice resulting ... from [a] probable inability to present facts and legal issues to the court in a complex but arguably meritorious case." *Smith–Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir.1984). A brief examination of plaintiff's complaint and motion for summary judgment supports appointment of counsel. Although well written, plaintiff clearly did not appreciate the complexity of his complaint. Furthermore, I believe that the issue of qualified immunity, the related issue of damages, and possible trial on such issues would best be handled by an experienced attorney. Therefore, I conclude that in order to provide plaintiff with a fair opportunity to present the remainder of his case it is necessary to appoint counsel at this time.

An appropriate Order follows.

### ORDER

AND NOW, on this 5th day of October, 1987, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

2. Defendant Howard, Sr. is enjoined from sitting as a hearing examiner or on a disciplinary committee in any prisoner disciplinary proceeding where his son, Howard, Jr., initiated the misconduct charge or is called as a witness.

3. Counsel is appointed for plaintiff. The Clerk's Office shall notify the court when counsel has been selected. Plaintiff's counsel shall promptly contact the court to schedule a status conference.

4. Plaintiff shall be afforded a new disciplinary hearing concerning the post-visit search. Such hearing shall be in accordance with the requirements set forth in the Memorandum Opinion.

AND IT IS SO ORDERED.