Abraham O. MASHMAN

v.

UNIVERSAL MATCH CORPORATION.

Civ. A. No. 89–0992.

United States District Court,
E.D. Pennsylvania.

Sept. 8, 1989.

942

Stephen G. Ansole, Philadelphia, Pa., for plaintiff.

Robert M. Goldich, Philadelphia, Pa., for defendant.

MEMORANDUM

NEWCOMER, District Judge.

Plaintiff brought this action alleging various federal and state claims regarding the termination of his employment with defendant corporation. Before me now are plaintiff's Motion for Partial Summary Judgment and defendant's two separate motions for partial summary judgment.[1] For the rationale which follows I will deny defendant's motions and grant plaintiff's motion.

### I. *Background.*

Plaintiff Abraham O. Mashman became an employee of defendant Universal Match Corporation ("Universal") in 1963 as a sales representative. There is some evidence that plaintiff throughout his career was a successful salesman for Universal. In October, 1984, plaintiff suffered a heart attack and later underwent angioplasty for his heart condition. Due to his medical condition plaintiff was out of work for six months. Effective May 1, 1985, plaintiff was cleared by his physician to resume his ordinary work routine.

In May, 1987, as a result of continuing losses Universal decided to reduce its overhead by $800,000 per year.[2] Accordingly, Universal also determined that it would eliminate 27 of the 85 sales positions in the company. Deposition testimony indicates that Universal decided to eliminate sales personnel based primarily on then-recent sales performance, leaving such determination to the regional sales managers. Defendant's Ex. B at 89–90, 95–96.

The decision as to which of the six salesmen in the Philadelphia Sales Region would be terminated was left to sales manager Milton Hirsch. Mr. Hirsch, basing his decision on then-recent sales performance, decided to terminate plaintiff. Accordingly, Universal terminated Mr. Mashman in

---

1. The defendant's two motions for partial summary judgment, if both granted, would dispose of the case in its entirety.

2. Swedish Match Corporation of Sweden purchased the defendant corporation in 1985. It was the new ownership of Universal which was the impetus for many of the changes in the structure and management of defendant which serves as the backdrop for this case.

June, 1987. At the time of the termination plaintiff was 66 years old. Mr. Hirsch informed plaintiff that he was being terminated for unsatisfactory sales performance. Defendant's Ex. A.

At the same time, Universal offered Mr. Mashman the opportunity to retain a sales relationship with the corporation as an independent contractor. Plaintiff, subsequently agreed to enter into the relationship and signed a written Sales Agent Agreement ("Agency Agreement") with Universal. Defendant's Ex. D. Pursuant to the Agency Agreement Mr. Mashman was to receive, as his sole compensation, commissions on his sales. *Id.* Although there is some evidence that Mr. Mashman considered the Agency Agreement to represent a long-term relationship, there was a specific provision providing for termination of the Agency Agreement with thirty days notice by either party at-will.

Universal's financial difficulties created further problems regarding the relationship of the corporation with plaintiff. At the same time that Universal terminated plaintiff it also eliminated the Philadelphia regional sales office placing the area within the larger Northeast Sales Region. The former manager of that office, Mr. Hirsch, was at that time relegated to performing direct sales duties. According to the defendant, Mr. Hirsch's duties were complicated, and to a certain extent hindered, by the sales operation of Mr. Mashman. Defendant's Ex. C. Defendant avers that the regional manager for the Northeast requested permission from the corporation to terminate the Agency Agreement with plaintiff.

Defendant admits that it decided not to terminate the Agency Agreement with plaintiff at that time due to legal negotiations then underway regarding plaintiff's termination. Mr. Mashman had retained counsel and was claiming that Universal owed him commissions from his work prior to termination as an employee. The parties reached agreement regarding the past commissions.

The defendant agreed to pay Mr. Mashman $4,500.00 for owed commissions. The plaintiff signed a general release (the "Release") which provides:

> For the consideration of Four Thousand Five Hundred Dollars, ($4,500.00) paid by Universal Match Corporation to Abraham O. Mashman, the receipt and sufficiency of which is hereby acknowledged, Abraham O. Mashman does hereby release, acquit and forever discharge Universal Match Corporation, its successors and assigns, and all other persons, firms, and corporations, from any and all claims, demands, or causes of action arising out of his employment with Universal Match Corporation and termination thereof, with exception of the claims for pension benefits which said Abraham O. Mashman may have against the released parties.

Defendant's Ex. F. Plaintiff executed the release on November 3, 1987.

With the back commission problem resolved, defendant proceeded to give notice to Mr. Mashman on November 13, 1987, that it was terminating the Agent Agreement. Plaintiff then initiated the instant suit with a multicount Complaint alleging as follows:

Count I: a claim that termination of plaintiff's employment in June, 1987, was in violation of the federal Age Discrimination in Employment Act ("ADEA");

Count II: a state law claim for handicap discrimination;

Count III: a state claim for fraudulent misrepresentation with regard to the negotiations to resolve the back commissions;

Count IV: a claim for wrongful discharge with regard to the termination of the Agency Agreement;

Count VI:[3] a claim that the termination of the Agency Agreement was breach of contract; and,

Count VII: a claim that defendant is estopped from terminating the Agent Agreement.

---

**3.** Count V was voluntarily dismissed by stipulation.

## II. *Summary Judgment Standard.*

■ A trial court may enter summary judgment if, after review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *Long v. New York Life Insurance Co.*, 721 F.2d 118, 119 (3d Cir. 1983); *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, 595 F.Supp. 800, 802 (E.D.Pa.1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom, when viewed in a light most favorable to the nonmoving party, could result in a judgment for the nonmoving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3d Cir.), *cert. denied* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Vines v. Howard*, 676 F.Supp. 608, 610 (E.D.Pa.1987).

■ The moving party must initially show an absence of a genuine issue concerning any material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988). The moving party discharges this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553; *Vines*, 676 F.Supp. at 610. Once the moving party satisfies this burden, the burden then shifts to the nonmoving party, who must go beyond his pleadings and designate specific facts by the use of affidavits, depositions, admissions and answers to interrogatories showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, Fed.R.Civ.P. 56 mandates that when the nonmoving party bears the burden of proof it must "make a showing sufficient to establish [every] element essential to that party's case." *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## III. *Discussion.*

Defendant moves for summary judgment as to all the claims against it. Accordingly defendant asserts that summary judgment should be granted as to the claims arising out of the termination of the employment relationship because plaintiff signed a Release as to all claims Mr. Mashman may have had against the defendant at that time. Plaintiff, for his part moves for summary judgment only as to the issue of the validity of the Release. I shall first address the question of the Release and then the other issues on summary judgment.

### A. The Signed Release.

■ The Release clearly indicates that the plaintiff agreed to the Release as a result of negotiations to settle the back commissions which plaintiff alleged he was owed. And the language of the Release specifically states that its scope includes "all claims, demands, or causes of action arising out of his employment with Universal ... and termination thereof...." Defendant's Ex. F. The issue before me now is whether the Release precludes the claims plaintiff brings as a result of his termination as an employee of Universal, namely the claims brought pursuant to ADEA and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* I conclude that it does not.

The release of rights under the ADEA is suspect where it is not part of the settlement of an age discrimination claim. *Equal Employment Opportunity Commission v. United States Steel Corporation*, 583 F.Supp. 1357 (W.D.Pa.1984). To enforce the waiver of an ADEA claim the court must determine whether the waiver of the age discrimination claim is knowing and wilfully made. *Coventry v. United States Steel Corp.*, 856 F.2d 514 (3d Cir. 1988).

In evaluating the possible release of ADEA claims the trial Court must consider the totality of the circumstances, "necessitating careful evaluation of the release form itself as well as the complete circumstances in which it was executed." *Cirillo v. Arco Chemical Co.*, 862 F.2d 448 (3d

Cir.1988). The Third Circuit has enumerated seven, nonexclusive, factors to be considered:

1) the clarity and specificity of the release language;

2) the plaintiff's education and business experience;

3) the amount of time plaintiff had for deliberation about the release before signing it;

4) whether Plaintiff knew or should have known his rights upon execution of the release;

5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel;

6) whether there was an opportunity for negotiation of the terms of the agreement; and,

7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 451. *See also Coventry*, 856 F.2d at 523.

The parties are in agreement that plaintiff had the benefit of counsel when he made the claim for back commissions and negotiated the ultimate agreement. The language of the release on its face covers all claims that the plaintiff may have had at that time; and plaintiff's counsel should have been fully aware that "all claims" would cover everything and not just the claim for past commissions. Furthermore, the parties were both aware that they could specify certain claims not to be covered by the Release as evidenced by the language creating the exception for pension claims. All of these factors weigh in favor of concluding that the age discrimination claim is also released by the agreement.

There are, however, significant factors which support the opposite conclusion. First, there is no specific reference in the Release to any possible discrimination claims that plaintiff may have as a result of the termination. The evidence indicates that there were no discussions with regard to any other claims apart from the back commission and pensions claims. Plaintiff's Response, Ex A, 174–75. Moreover, plaintiff has testified that he did not consider at the time of the Release that he had been discriminated against. Plaintiff's Ex. B at 134. At the time the Release was signed Mr. Mashman was still performing sales duties for defendant pursuant to the Agency Agreement. Defendant admits that it had decided to terminate the Agency Agreement before the Release was executed but purposefully waited until the Release was signed. Plaintiff's assertion that he did not believe that the termination from employment was the result of discrimination until after the subsequent termination of the Agency Agreement, is reasonable and credible.

Second, the consideration given in exchange for the executed Release was roughly equal to the amount plaintiff demanded with regard to back commissions. The credible evidence indicates that the $4,500 paid pursuant to the Release was equal or less than the amount to which plaintiff was entitled as back commission. *See* Plaintiff's Response, Ex. J. Moreover, there is evidence that defendant would have paid the $4,500 for back commissions even if Mr. Mashman did not sign the Release. Ex. B at 170. These two factors weigh very heavily in support of a conclusion that there was not a knowing and willful waiver of a age discrimination claim.

Certainly, the waiver was a result of the claim for back commissions and not an age or handicap discrimination claim. This fact makes the signed waiver, as it may apply to a age discrimination claim, suspect. Upon weighing all the factors enumerated by the Third Circuit, I conclude that the signed waiver does not effect plaintiff's right to bring an age or handicap discrimination claim against defendant. Therefore, I will declare the Release invalid with regard to discrimination.

B. Other Grounds for Summary Judgment.

Defendant also moves for summary judgment on Counts II, III, IV, VI and VII. I

have carefully reviewed the submissions of the parties and have determined that material issues of genuine fact remain with regard to the claims remaining in this action. Therefore, defendant's motion for summary judgment will be denied.