James A. WILLIAMS, Appellant,

v.

STATE of Iowa, Appellee.

No. 86–1548.

Supreme Court of Iowa.

April 13, 1988.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Lucille M. Hardy, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and SNELL, JJ.

SNELL, Justice.

On September 13, 1985, a three-member disciplinary committee found petitioner, James A. Williams, an inmate of the Iowa State Men's Reformatory in Anamosa, to have violated a prison rule. As a sanction for the violation, Williams was given five days solitary confinement, lost four days of good conduct credit, and was placed in indefinite disciplinary detention. He exhausted his administrative appeals and then initiated the present postconviction action. His counsel's request for access to confidential information relied upon by the disciplinary committee was twice denied by the district court which subsequently denied his application for relief. Williams filed his notice of appeal, and the appellate defender's office was appointed to represent him. On January 5, 1987, Williams' appellate counsel moved this court for an order permitting examination of the confidential information. This information had earlier been denied him pursuant to a policy of the office of the attorney general. The State resisted the motion, which was denied.

I. Williams contends that denying his appellate counsel access to the confidential information used by the disciplinary committee violates his rights to effective assistance of counsel as guaranteed by the sixth

and fourteenth amendments to the federal constitution and by state statute. In addition, he claims the denial violates his right to meaningful access to the courts as guaranteed by the fifth and fourteenth amendments to the federal constitution. We discussed, but did not decide, these issues in *Harper v. State*, 397 N.W.2d 740, 742–43 (Iowa 1986).

A. *Sixth amendment claim.* Williams' initial constitutional claim must be distinguished from those which have usually arisen from prison disciplinary proceedings. The due process clause of the fourteenth amendment, in which Williams grounds his challenge, gives rise to three types of claims: (1) those for violation of incorporated provisions of the Bill of Rights; (2) those for violation of the substantive component of the due process clause; and (3) those for violation of procedural due process. *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1499–1502 (11th Cir.1985) (en banc), *cert. denied*, 476 U.S. 115, 106 S.Ct. 1970, 90 L.Ed.2d 654 and *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed. 673 (1986); *see Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 677, 88 L.Ed.2d 662, 672 (1986) (Stevens, J. concurring); *Burch v. Apalachee Community Health Servs., Inc.*, 804 F.2d 1549, 1552, *reh'g granted*, *vacated*, 812 F.2d 1339 (11th Cir.1986).

Our previous cases dealing with the constitutional rights of prisoners in disciplinary proceedings have been in the context of challenges involving either procedural due process, *see, e.g., Niday v. State*, 353 N.W.2d 92, 93–95 (Iowa 1984), or the substantive component of the due process clause, *see, e.g., Wilson v. Farrier*, 372 N.W.2d 499, 501–02 (Iowa 1985). Williams' constitutional claim to effective assistance of counsel, however, involves incorporated provisions of the Bill of Rights. Given that context, we reject his claim.

The sixth amendment right to counsel attaches only at the initiation of adversary judicial criminal proceedings. *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146, 155 (1984). This is consistent with both the constitutional language granting the right and the underlying purposes of that right. *Id.* at 188–89, 104 S.Ct. at 2297–98, 18 L.Ed.2d at 154; *see* U.S. Const. amend. VI. Prison disciplinary actions are not criminal proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974). Relatedly, the United States Supreme Court has held that prison inmates do not have a due process right to counsel in disciplinary hearings. *Baxter v. Palmigiano*, 425 U.S. 308, 315, 96 S.Ct. 1551, 1556–57, 47 L.Ed.2d 810, 819 (1976).

As Williams has no sixth amendment right to counsel at his disciplinary hearing, much less, we think, does he have such a right in proceedings instituted to challenge the results of that hearing. These latter proceedings are no more in the nature of criminal actions than is the original disciplinary hearing. Even the constitutional necessity for such judicial review proceedings is not a settled matter. *See Walpole v. Hill*, 472 U.S. 445, 449–50, 105 S.Ct. 2768, 2771–73, 86 L.Ed.2d 356, 361–63 (1985); *Wilson*, 372 N.W.2d at 501. In any event, whatever rights properly accrue under the constitution to inmates such as Williams, a right to counsel under the sixth amendment is not included among them. As a corollary to this conclusion, the denial of confidential information to his appellate counsel does not abridge that right. Williams' initial contention must fail.

B. *Statutory right to counsel.* Williams maintains the denial of appellate access to confidential information violates his right to effective assistance of counsel as secured by Iowa Code section 663A.5. In *Patchette v. State*, 374 N.W.2d 397, 398–99 (Iowa 1985), we concluded that this statute grants an individual the right to effective assistance of counsel in postconviction actions which seek to challenge prison disciplinary proceedings. We today hold this guaranty to extend to appellate, as well as trial, counsel. *See Evitts v. Lucey*, 469 U.S. 387, 397, 105 S.Ct. 830, 836–37, 83 L.Ed.2d 821, 830–31 (recognition of due process right to effective assistance of counsel on appeal), *reh'g denied*, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985).

Williams' statutory right, however, like its constitutional counterpart, is not absolute. Its exercise must be balanced against the legitimate institutional needs and objectives which our cases have recognized. *See, e.g., Losee v. State,* 374 N.W.3d 402, 404 (Iowa 1985). *Wagner v. Williford,* 804 F.2d 1012, 1016–18 (7th Cir.1986), dealt with a similar claim, although in a constitutional context, and noted "the extreme difficulty of balancing the interests of prisoners and of prison authorities with the requirements of the Constitution." The present balance is no less difficult. However, in the final analysis, we believe the balance here must be struck in favor of the State.

■ Prison officials are entitled to exercise discretion in refusing to disclose the identity of confidential informants in order that the safety of such persons will not be jeopardized. *Losee,* 374 N.W.2d at 404; *Muhammad v. Butler,* 655 F.Supp. 1470, 1472 (D.N.J.1987). The attorney general's nondisclosure policy, motivated also by these concerns, is grounded in legitimate and substantial interests. Balanced against such concerns are the needs of Williams' counsel. Here, those needs are minimal.

■ Actions for postconviction relief are law actions to which normal rules of error preservation apply. *See Harper v. State,* 397 N.W.2d 740, 742 (Iowa 1986). Our Code provides that "[a]ll grounds for relief available to [a postconviction] applicant ... must be raised in the applicant's original, supplemental or amended application." Iowa Code § 663A.8 (1985). Accordingly, Williams' appellate challenges to the disciplinary committee's actions are limited to those raised by his application in the postconviction court. *Cf., e.g., Kartridg Pak Co. v. Department of Revenue,* 362 N.W.2d 557, 561 (Iowa 1985) (supreme court will not consider on appeal a theory of relief not asserted in the district court).

■ The sole grounds for relief contained in Williams' application which pertain to the confidential information are: (1) that there was no finding in the committee's decision that the information should be confidential; and (2) the decision did not contain reasons attesting to the reliability of the confidential information. The second of these contentions is without merit. Our law is clear that such reasons need not be given. *Niday v. State,* 353 N.W.2d 92, 94 (Iowa 1984). Accordingly, the merits of this contention would not be resuscitated by appellate counsel's access to the confidential information.

■ Williams first postconviction argument is similarly nonmeritorious, with or without counsel's access to the information. We recently disposed of an identical argument in *Allen v. State,* 418 N.W.2d 67, 70 (Iowa 1988):

Although applicant contends that the State has failed to establish the need for confidentiality of the informant's evidence, we disagree with that contention. The State must consider the need to provide for reasonable personal safety of inmates who inform with respect to prison violations.

(Citations omitted.) This reasoning applies in the present case as well.

Williams' appellate counsel could not have successfully argued either of the above-discussed contentions even with access to the confidential information. Consequently, counsel's inability to see the information did not effect his competence as Williams' counsel.

■ C. *Right to court access.* Williams' final attack on the denial of access is grounded in his constitutional right of access to the courts. This right is a substantive guarantee secured by the due process clause. *Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224, 243 (1974). "Meaningful access" to the courts is the right's touchstone. *Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72, 80 (1977).

Just as with his right to counsel, however, Williams' right to court access is not carte blanche vis-a-vis the interests of the institution in which he resides. In *Procunier,* the Court stated that

prison administrators are not required to adopt every proposal that may be thought to facilitate prisoner access to the courts. The extent to which that right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give the expertise and discretionary authority of correctional officials.

416 U.S. at 420, 94 S.Ct. at 1814–15, 40 L.Ed.2d at 244. Although we today deal with a practice of the attorney general's office and not of correctional officials, the relative nature of the right to court access is nonetheless the same.

In weighing Williams' right to court access against the State's interests, the State prevails. Williams has failed to demonstrate an impermissible restraint on his right to court access. Accordingly, this claim must fail.

 II. Williams contends the composition of the committee which imposed his discipline was in violation of an Iowa statute. This is because the committee members were not "independent hearing officers" as required by the following statutory provision:

The director of the Iowa department of corrections shall appoint independent hearing officers whose duties shall include but not be limited to review, as provided in section 903A.3, of the conduct of inmates in institutions under the department.

Iowa Code § 903A.1 (1985).

It is clear that the decision whether good conduct credits are to be forfeited is to be made only by an independent hearing officer, appointed pursuant to section 903A.1. This is clear both from subsection 903A.3(1) which states "the independent hearing officer may order forfeiture of any or all good conduct time ..." and from the application of a basic canon of statutory construction: "Expressio unius est exclusio alterius" or "the expression of one thing is the exclusion of another." *See City of Fort Dodge v. Janvrin,* 372 N.W.2d 209, 211 (Iowa 1985). When the legislature reposed the decision-making duty on an independent

hearing officer, we assume it withdrew that duty from all other persons.

Of the three-member committee which both heard the disciplinary case against Williams and ordered the forfeiture of his good conduct credits, only Larry Brimeyer was a hearing officer. Paul Fortin and John Sissel, the remaining committee members, were a reformatory shop foreman and the reformatory's assistant warden, respectively. Consequently, we agree with Williams that the composition of the committee was not in accord with our statutory scheme. We note, however, that the decision to forfeit Williams' good conduct credits was concurred in by all committee members. As the issue of prejudice has always played a fundamental role in our postconviction jurisprudence, *see, e.g., Polly v. State,* 355 N.W.2d 849, 855–56 (Iowa 1984), we examine the record and determine whether Williams was in fact prejudiced by the irregularly-constituted committee.

While it is clear that the dictates of the Iowa Administrative Procedure Act do not apply to prison disciplinary proceedings, *Langley v. Scurr,* 305 N.W.2d 418, 419 (Iowa 1981), administrative proceedings provide a helpful analogy to the current situation. As concerns those proceedings, one court has stated that while it is true that when a decision is committed to a particular individual that individual must be the one who reviews the evidence on which the decision is to be based, it does not follow that all other individuals are shut out of the decision process. *Seacoast Anti-Pollution League v. Costle,* 572 F.2d 872, 881 (1st Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978). We think that when the legislature mandated the appointment of independent hearing officers, it was addressing the due process concerns for an impartial decision-maker which have arisen in the cases dealing with prisoner disciplinary hearings. *See Wolff v. McDonnell,* 418 U.S. 539, 570–71, 94 S.Ct. 2963, 2982, 41 L.Ed.2d 935, 959–60 (1974); *Langley,* 305 N.W.2d at 420. Given this constitutional concern, we cannot say the presence of Fortin and Sissel renders the decision invalid.

There is no constitutional require-ment that those who preside at prisoner disciplinary proceedings be recruited from outside the institution. *Langley*, 305 N.W. 2d at 420. Likewise, there is no absolute constitutional requirement that the deci-sion-maker be an uninvolved person when an interest protected by due process is at stake. *See Arnett v. Kennedy*, 416 U.S. 134, 152–58, 94 S.Ct. 1633, 1643–46, 40 L.Ed.2d 15, 31–35, *reh'g denied*, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); *Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1376 n. 1 (9th Cir.1984); *Stretton v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 369 n. 1 (9th Cir.1976). In *Wolff* the Su-preme Court refused to characterize a pris-on disciplinary committee made up of an associate warden in charge of custody, a correctional industries superintendent, and the reception center director as "not suffi-ciently impartial to satisfy the Due Process Clause." 418 U.S. at 571, 94 S.Ct. at 2982, 41 L.Ed.2d at 959.

Similarly here, there is nothing in this record showing a prejudice against Williams that would taint the result. The independence required of the hearing offi-cer is that the officer not be personally involved in the incident for which discipline is sought or in prior disciplinary actions against the inmate. Larry Brimeyer, as an independent hearing officer, satisfied this measure and the statutory directive regard-ing inmate disciplinary procedure. The presence of Fortin and Sissel, although un-necessary under section 903A.1, was in an advisory capacity only; their votes in favor of disciplining Williams were superfluous.

We emphasize that our decision today is limited to the particular factual situation which confronts us. Iowa Code chapter 903A creates a comprehensive system for the handling of prisoner disciplinary ac-tions which prison authorities are obligated to follow. Failure to do so may, given the particular facts of another case, result in prejudice to an inmate. Williams, however, has demonstrated neither such prejudice nor, consequently, his claim to relief. Ac-cordingly, the judgment of the district court which dismissed his application is af-firmed.

AFFIRMED.