Mitchell Lee THOMPSON, Appellant,

v.

STATE of Iowa, Appellee.

No. 94–191.

Supreme Court of Iowa.

May 24, 1995.

216

Philip B. Mears of the Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Atty. Gen., and Kristin W. Ensign and Layne M. Lindebak, Asst. Attys. Gen., for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

PER CURIAM.

Mitchell Lee Thompson appeals from a denial of his application for postconviction relief. Thompson contends he was denied his due process right to have an impartial and independent hearing officer on his prison disciplinary committee. We affirm.

A prison disciplinary committee at the Iowa Men's Reformatory (IMR) in Anamosa found Mitchell Thompson guilty of possessing a gambling debt list in violation of disciplinary rule 30. The committee imposed forty days disciplinary detention at level one and loss of sixteen days good conduct time. Thompson now argues he was denied his due process right to an impartial and independent hearing officer because Larry Brimeyer, the administrative law judge who headed the disciplinary committee, was the subject of a contempt-of-court action Thompson was pursuing in another matter.

This other matter concerned Thompson's successful challenge to the automatic deduction of twenty percent of his institutional wages for restitution. A district court judge filed an order stating Thompson's deductions should be made on a sliding scale. Brimeyer told Thompson the court order was a request, not a directive, and as such the institution would deny the request and comply with the usual institutional procedure in collecting restitution. Thompson then wrote a letter to the district court judge stating, "Brimeyer ... his boss in Des Moines, and the Attorney General, Bonnie Campbell," refused to comply with the court's order and that this refusal was a contempt of court. Thompson wrote he felt let down by the department of corrections and asked the court to clarify the matter for them. (The alleged debt list was written on the back of Thompson's copy of this letter.)

Postconviction proceedings are ordinarily reviewed on error. *Kinnersley v. State*, 494 N.W.2d 698, 699 (Iowa 1993). However, when a denial of constitutional rights is alleged, we make our own evaluation of the totality of circumstances in a de novo review. *Id.*

Prisoners' due process rights were outlined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951; *Langley v. Scurr*, 305 N.W.2d 418, 420 (Iowa 1981). However, a disciplinary committee must not present such a hazard of arbitrary decision-making that it deprives the inmate of due process of law. *Wolff*, 418 U.S. at 571, 94 S.Ct. at 2982, 41 L.Ed.2d at 959–60. Therefore, an impartial tribunal is a fundamental right imposed by due process in disciplinary proceedings. *Fichtner v. Iowa State Penitentiary*, 285 N.W.2d 751, 758 (Iowa 1979). In this vein, Iowa Code section 903A.1 (1993), provides:

The director of the Iowa department of corrections shall appoint *independent administrative law judges* whose duties shall include but are not limited to review ... of the conduct of inmates in institutions under the department.

(Emphasis added.)

■ Thompson claims Brimeyer was not impartial or independent because Thompson's letter to the district court was a request to find Brimeyer in contempt for failing to honor the court order. Even assuming this letter constituted a contempt action against Brimeyer, automatic and mandatory disqualification of Brimeyer in this situation would unduly extend *Wolff's* due process requirements. *See Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). Due process is satisfied as long as no member of a disciplinary board has any form of personal involvement in the case. *See Wolff*, 418 U.S. at 592, 94 S.Ct. at 2992, 41 L.Ed.2d at 972 (Marshall, J., concurring). Thus, the question becomes whether, with respect to the refusal to comply with the order in the restitution matter, Brimeyer had direct, personal, and substantial interests adverse to Thompson or whether he was performing ministerial duties in his administrative capacity. *See Malek v. Camp*, 822 F.2d 812, 816 (8th Cir.1987) (comparing claims of "personal" bias and "institutional" bias); *see also Williams v. State*, 421 N.W.2d 890, 895 (Iowa 1988) (independence required of the hearing officer is that the officer not be personally involved in the incident for which discipline is sought or in prior disciplinary actions against inmate). In a situation where there is personal bias, a prior opinion can be formed on the subject of the hearing whereas in a situation which involves ministerial duties the ability to serve as a neutral and detached decisionmaker may not be impaired. *See Malek*, 822 F.2d at 816 (citing *Redding*, 717 F.2d at 1113); *see also Langley*, 305 N.W.2d at 420.

*Wolff* does not provide guidelines for evaluating impartiality. In *Ruiz v. Estelle*, 503 F.Supp. 1265, 1355–56 (S.D.Tex.1980), *aff'd in part, rev'd in part*, 679 F.2d 1115 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), the Court looked to other decisions to establish the following guidelines:

[D]ue process requires that hearing bodies be independent, fairminded, and capable of an individuated judgment in each case, based upon the evidence presented at the hearing. In the context of prison disciplinary hearings, two standards must be met: (1) the disciplinary committee must not include persons who were involved in the incident being judged; and (2) individual members of the disciplinary committee must not have such pre-existing biases or opinions as to preclude them from deciding, with open minds, the cases which come before them.

(Citing *Morrissey v. Brewer*, 408 U.S. 471, 486, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 497 (1972); *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 716 (7th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974)).

■ The evidence does not support a finding that Brimeyer had a preexisting personal bias or opinion that would preclude him from deciding Thompson's case with an open mind. Brimeyer testified he did not view the letter Thompson wrote to the district court as a contempt action against him. He further testified the person in charge of overseeing statewide restitution procedure in Des Moines made the decision to reject the court's request to use a sliding scale and continue with the usual policy. Brimeyer merely acted on that directive; he did not make restitution policy. He was carrying out ministerial duties in informing Thompson the court order would not be implemented. Indeed, Thompson's letter did not solely pinpoint Brimeyer, it also named the overseer in Des Moines, the attorney general, and the department of corrections as a whole.

We conclude Brimeyer did not have any cognizable direct, personal, and substantial interests adverse to Thompson's such that he was not impartial in making the decision in the disciplinary proceeding. *See generally Edwards v. White*, 501 F.Supp. 8, 11 (M.D.Pa.1979) (deputy superintendent was not impartial when he sat on disciplinary tribunal that decided prisoner was guilty for

possessing petition requesting removal of the same deputy superintendent); *Vines v. Howard,* 676 F.Supp. 608, 614–15 (E.D.Pa.1987) (impartiality tainted when corrections officer who initiated misconduct charge against the prisoner was disciplinary hearing officer's son and the issues came down to whether the corrections officer or prisoner was more credible). To require the showing of personal involvement in circumstances presented in this case prevents the problem of vesting too much control in a prisoner to determine the make-up of a committee by using litigation strategy. *See Redding,* 717 F.2d at 1113.

■ The issue of impartiality in cases such as this one is best decided on a case-by-case basis. *Id.; c.f. Williams,* 421 N.W.2d at 895. Based on the facts of this case, Thompson was not denied his right to due process. We affirm the district court's denial of Thompson's application for postconviction relief.

**AFFIRMED.**