**IN THE COURT OF APPEALS OF IOWA**

No. 21-0348
Filed August 3, 2022

**IN THE MATTER OF THE GUARDIANSHIP OF J.W.,**

**J.V.,**
    Appellant.
_____


Appeal from the Iowa District Court for Polk County, William A. Price, District Associate Judge.


The attorney-petitioner appeals from the district court's dismissal of his petition to establish an involuntary guardianship over J.W., the child of his former client. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**


Jacob van Cleaf of Van Cleaf & McCormack Law Firm, LLP, Des Moines, self-represented appellant.

Alexis R. Dahlhauser of Neighborhood Law Group of Iowa, P.C., West Des Moines, for appellee mother.

Cynthia A. Bahls of The Law Shop by Skogerson McGinn LLC, Van Meter, attorney for minor child.

Stephen K. Alison of Stephen Allison Law, PLC, Des Moines, court visitor.


Heard by May, P.J., Greer, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**POTTERFIELD, Senior Judge.**

Iowa Attorney Jacob van Cleaf petitioned to take involuntary guardianship of a former client's child. *See* Iowa Code § 232D.204 (2020). The former client—the child's mother—asserted van Cleaf's bringing of the action violated numerous Iowa Rules of Professional Conduct. The district court agreed with the mother; ruled that van Cleaf had violated Iowa Rules of Professional Conduct 32:1.9 and 32:1.8; and, as the remedy, dismissed the guardianship action. In reaching its decision, the court apparently concluded that van Cleaf would not be able to represent a third party in this case against the mother without violating the rules, which meant he also could not represent himself nor even be a party in such an action. The court also ordered that its ruling be sent to the Commission on Legal Responsibility and referred the case to the Iowa Department of Human Services to determine if J.W. was a child in a need of assistance.

Van Cleaf appeals. We consider whether the district court's dismissal of the guardianship petition was proper.

**I. Background Facts and Proceedings.**

In December 2020, van Cleaf petitioned for involuntary guardianship of J.W., a nine-year-old girl. Van Cleaf claimed he had been serving as the de facto guardian of J.W. for six years—since sometime in 2015. In the same petition, van Cleaf proposed Amelia Wildt, the office manager of van Cleaf and McComick Law Firm, LLP, as co-guardian, stating she had been serving as J.W.'s de facto guardian for seven years and eleven months. In the petition, van Cleaf claimed he and Wildt had acted as de facto guardians by "[t]aking custody of [J.W.] and establishing her primary residence when not actively prevented from doing so by

Mother"; "[t]ransporting [J.W.] to and from daycare when not actively prevented from doing so by Mother"; and "[t]ransporting [J.W.] to school when not actively prevented from doing so by Mother."  He complained the mother "actively prevent[ed] the de facto guardians from taking [J.W.] into their care and establishing her primary residence or transporting [her] to school."

At the same time, van Cleaf filed a motion for emergency appointment of temporary co-guardians, proposing himself and Wildt.

The district court appointed attorneys for the mother and J.W. and denied the petition for emergency appointment of guardians.  It scheduled a hearing for January 5, 2021.

Then, on January 4, van Cleaf filed a motion asking the court to allow him to serve the mother by publication or certified mail.  He claimed she was actively avoiding service.  Van Cleaf attached to his a motion an affidavit from Wildt regarding service, which included what Wildt described as screenshots of online conversations between herself and the mother that took place in late December 2020.

Following an unreported hearing, the court filed an order stating the proposed guardians agreed to continue attempting to serve the mother.

On January 27, van Cleaf filed what he entitled "notice to court of alleged ethical issue and request for enumeration of the same."  In the filing, van Cleaf stated the mother's attorney emailed him the following:

> In speaking with my client, [the mother], and further reviewing the Petition for guardianship you filed I have become aware of several serious ethical concerns regarding your involvement with this client and matter.  I would ask that you please make [the court] aware of them prior to our hearing tomorrow.

Van Cleaf asked that the mother's attorney file a list of the alleged ethical issues and remedies sought.

The mother, through her attorney, responded the next day. She listed eight Iowa Rules of Professional Conduct she believed were implicated:

> Rule 32:1.7 Conflict of Interest: Current Clients
> Rule 32:1.9 Duties to Former Clients
> Rule 32:1.10 Imputation of Conflicts of Interest: General Rules
> Rule 32:3.7 Lawyer as Witness
> Rule 32:4.1 Truthfulness in Statements to Others
> Rule 32:4.2 Communication with Person Represented by Counsel
> Rule 32:5.1 Responsibilities of Partners, Manager and Supervisory Lawyers
> Rule 32:5.3 Responsibilities Regarding Nonlawyer Assistants

The mother asked for the court to dismiss the guardianship petition and for "[a]ssurance that Mr. van Cleaf, nor any current or future firm of his employ, will seek guardianship or represent anyone seeking guardianship of any child of Mother."

The court scheduled a hearing for February 25 "to address [the mother's concerns] after parties have adequate time to determine the exact allegations and appropriate remedies." Around the same time, the court granted a motion to bifurcate the role of J.W.'s attorney and the court visitor.[1]

Leading up to the hearing, the mother filed a brief in support of her position van Cleaf had violated several Iowa Rules of Professional Conduct. She listed five cases in which either van Cleaf or his law partner represented her from 2013 to

---

[1] Iowa Code section 232D.305(3) and (4) outline the duties and obligations of a court visitor.

2016.[2]  Four of the cases involved custody actions.  "Most notably" was a case from 2016 where van Cleaf's partner "represented the mother in a custody dispute" involving "J.W., the child at issue in this guardianship."  In that case, the mother was granted sole legal custody and physical care of J.W.  The mother offered arguments in support of finding van Cleaf violated each of the eight Iowa Rules of Professional Conduct she listed.  In summation, the mother argued:

> Van Cleaf was introduced to the Mother as a prospective client, through his legal assistant Wildt.  Since that initial consultation van Cleaf, and everyone at his firm, had definitive ethical obligations to the mother.  Over time, those duties shifted from those owed to a prospective client, to current client, to duties owed to a former client.  Although those duties shift slightly with each phase, there is no appropriate point to act in direct opposition to their client's interests.  Somehow, [van Cleaf and Wildt] got incredibly entangled on a personal level with this client of theirs, the Mother, to such an extent that they forgot their ethical obligations to her.
> At some point van Cleaf and Wildt began acting against their client, despite their duty not to do so, by "reporting" her.  And then claiming that Mother is unable to care for her child, due to a difference in opinion on child-rearing, when it comes to therapy and ADHD treatment.  The entire firm is ethically precluded from acting against their former client's interest.  It defies logic to think that petitioning for involuntary guardianship of a former client's child, when they helped her get sole custody of that child, would not be contrary to the duties owed to Mother.

Through her attorney, J.W. also filed a brief, in which she "join[ed] in the Mother's brief especially as it relate[d] to the alleged ethical violations of Rule 32:1.9 and 32:1.10(a)."  J.W. claimed, "[T]here is only one remedy the undersigned believes is available to [van Cleaf], as well as this Court.  This case must be dismissed without prejudice."  She continued, "Once this case is properly dismissed, either

---

[2] Iowa Rule of Professional Conduct 32:1.10(1) deals with imputation of conflicts of interests; it states, "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 32:1.7 or 32:1.9 . . . ."

the State of Iowa or another interested party without an ethical objections to the Mother herein, may bring an action on behalf of the minor child to determine the merits of whether or not an actual guardianship is, in fact, appropriate."

In a responsive brief, van Cleaf asserted he was not prohibited from bringing the action against the mother or revealing information related to representation of her because the Iowa Rules of Professional Conduct do not bar an attorney from bringing a claim against a former client. He relied on rule 32:1.6(b)(5), which provides that "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . ." And rule 32:1.9(c)(2) says "[a] lawyer who has formerly represented a client in a matter . . . shall not thereafter . . . reveal information relating to the representation *except as these rules would permit or require with respect to a client*." (Emphasis added.) Van Cleaf denied that the information he obtained in representing the mother was substantially related to the guardianship action, claiming the mother "would only have a tenable claim that [he] violated Iowa Rule of Professional Conduct 32:1.9 if the matters were substantially related." Alternatively, he claimed any information he learned from his or his law firm's representation of the mother was "generally known, known to adverse parties, or so old as to be outdated, and thus . . . non-disqualifying." In support of this claim, van Cleaf attached nine affidavits to his brief to show "[a]lmost every allegation in the petition can be spoke to by third parties, unrelated to representation, whose association or contact with Mother is unrelated to any representation provided." Van Cleaf also relied on "filings by other parties in the prior actions against Mother,

which are available to anyone seeking to obtain them via EDMS." Next, van Cleaf asserted he was not violating rule 32:3.7, which prevents lawyers from "act[ing] as an advocate in which the lawyer is likely to be a necessary witness" absent certain exceptions, because he was appearing pro se—not representing a client. Van Cleaf also asserted he was not representing Wildt in the guardianship action. Finally, van Cleaf argued the remedies sought by the mother were not supported by law; he maintained dismissal was neither appropriate nor available. Rather, he maintained disqualification was the proper remedy, but even then, he denied it could be applied to prevent him from representing himself.

A hearing on van Cleaf's alleged violation of the rules of conduct—not the substance of the guardianship petition—took place in February 2021. At the outset, both van Cleaf and Wildt informed the court van Cleaf was not representing Wildt in the guardianship action. The court made an oral ruling from the bench that because Wildt never signed the petition filed by van Cleaf, filed her own petition, or had an attorney who represented her sign the petition for guardianship, she was not a party. The court concluded van Cleaf was the sole petitioner, who had proposed Wildt as a co-guardian.[3]

Van Cleaf continued to represent himself at the hearing. He testified that though his petition stated he became J.W.'s de facto guardian in 2015, after reviewing evidence, he now believed he "became a de facto guardian at some point in 2017." He asked the court for leave to amend his petition accordingly. During cross-examination, van Cleaf admitted he "gain[ed] some information

---

[3] Wildt acquiesced to this ruling at the hearing. She does not appeal, and van Cleaf does not challenge this portion of the district court's ruling.

relevant to [the mother's] relative parenting abilities compared to the other parent's" during his representation of her but claimed "all such information has either been disclosed already to the Court, making it generally known, or is known to adverse parties and thus does not serve as a basis for disqualification of an attorney." During the hearing, van Cleaf moved to admit the nine affidavits he filed as attachments to his brief. The court admitted the affidavit of van Cleaf's law partner because no party objected. The court admitted the other eight affidavit-exhibits over the other parties' objections "for the limited purpose of demonstrating that a guardianship may be necessary for [J.W.] and for no other purpose." Additionally, the court admitted exhibit J, which was an exhibit supplied by the opposing party in one of the previous cases in which van Cleaf represented the mother.

During a closing argument, the mother's attorney argued that rule 32:1.6(b)(5) cannot apply as broadly as van Cleaf urged, stating:

> But from my point of view, there is a case to be made. An attorney, myself or other, works with juvenile law. They work in . . . child in need of assistance cases. If I find that one of those parents just really isn't that great, at what point do I get to sue them to try to get custody of that child myself?
> At what point is it old news? At what point can someone else in my firm—can my assistant attempt to get custody of those children? If she leaves her with a baby-sitter, am I allowed to testify as a witness in that?

During the same argument, the mother's counsel proposed a number of remedies, including requiring van Cleaf to be represented by an attorney in the guardianship action. The child's attorney advocated for the case to be dismissed, stating:

> [R]egardless of the merits of the case, regardless of whether there should be a guardianship or should not, I don't believe that we can proceed forward with this current action because Mr. van Cleaf and

Ms. Wildt lack standing because any of their interests in the minor child and the minor child's welfare is trumped by their ethical duties to their former client.

And, therefore, because of these ethical duties to their former client, they are not in a position to act as either co-guardians or as petitioners in this matter.

And, therefore, because they lack standing, I believe that the Court would have the ability to dismiss this action without prejudice because, when I looked at the issue of standing, it states that a party asserting an issue is not properly situated to seek an adjudication from the courts.

In its written ruling, the district court noted it was "uncontroverted that [the mother] is a former client of" van Cleaf and his law partner. The court concluded van Cleaf violated rule 32:1.9(a) because the issue in the 2013 custody case over J.W. in which van Cleaf represented the mother, was "substantially related to [the] guardianship proceeding" and van Cleaf's interests in the guardianship action were materially adverse to the mother's interests. The court rejected van Cleaf's argument that rule 32:1.9(a) does not apply to lawyers representing themselves. The court also rejected van Cleaf's argument that rule 32:1.6(b)(5), which states lawyers may reveal information relating to the representation of a client to establish a claim on behalf of the lawyer in a controversy between the lawyer and client, applied to these facts and allowed van Cleaf to use or reveal information from the prior representations under rule 32:1.9(c). The district court found van Cleaf also violated rule 32:1.8(a), which involves conflicts of interests regarding current clients. The court concluded the violation under either rule 32:1.9 or 32:1.8 "would each independently require dismissal." Additionally, the court concluded Wildt's actions of contacting the mother about the guardianship action after the mother was appointed counsel, and van Cleaf's attaching screenshots of those

communications to his motion for alternative service—i.e. for his benefit—constituted a violation of rules 32:5.3(3)(c) and 32:4.2(a).

Van Cleaf appeals.

## II. Standard of Review.

We review whether the court properly dismissed the guardianship action for correction of errors at law. *See State v. Hammock*, 778 N.W.2d 209, 210–11 (Iowa Ct. App. 2009).

## III. Discussion.

In its written ruling, the district court did not explicitly state upon what it relied for the authority to dismiss van Cleaf's petition. The court considered whether certain Iowa Rules of Professional Conduct would prevent van Cleaf from representing a third party in this action against his former client, the mother. Once the court concluded some rules would prevent representation, it drew the conclusion that if van Cleaf could not represent a third party, he also could not represent himself. Taking it a step further, the court then concluded that if van Cleaf could not represent himself in the action, then he could not even be a party to such an action—whether represented by a separate attorney or not. And it seems then, because that left no possible role for van Cleaf to play, the court decided the guardianship action had to be dismissed.[4]

---

[4] Under the district court's reasoning, the Iowa Rules of Professional Conduct do not regulate certain actions but, rather, certain people; licensed attorneys are subject to the rules at all times, no matter their role. *But see Iowa Sup. Ct. Att'y Disciplinary Bd. v Rhinehart*, 827 N.W.2d 169, 176 (Iowa 2013) ("[L]awyers 'are required to obey the disciplinary rules when acting pro se or in a personal capacity.' Nevertheless, some rules target only the conduct of an attorney while serving as an advocate representing a client." (internal citation omitted)).

But, even assuming without deciding that van Cleaf violated the Iowa Rules of Professional Conduct,[5] we have found no authority that supports dismissal of the underlying legal action as a remedy. And if anything, the preamble to chapter 32 suggests our remedies should err on the side of restraint:

> [V]iolation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. . . . [T]he purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of that rule.

Iowa Ct. R. Preamble 32(20). Moreover, we have some general concerns about concluding the court can bar certain persons from being a party to or initiating a lawsuit. *See Williams v. State*, 421 N.W.2d 890, 893–94 (Iowa 1988) (recognizing the applicant's "constitutional right of access to the courts. This right is a substantive guarantee secured by the due process clause. 'Meaningful access' to the court is the right's touchstone'" (citations omitted)).

If we were to construe the mother's, J.W.'s, or both of their responsive filings to van Cleaf's "notice to court of alleged ethical issue and request for enumeration of the same" as a pre-answer motion to dismiss,[6] dismissal is still improper. Under

---

[5] Because we conclude dismissal was not an appropriate remedy for any rule violations, we do not decide whether van Cleaf has breached any of the Rules of Professional Conduct nor do we review the district court's analysis of the rules.

[6] At oral argument before this court, the mother—through her attorney—suggested she never sought a dismissal under Iowa Rule of Civil Procedure 1.421. In response to a question from the court, she stated:

> In fact, the only reason that this came to the court's attention was Mr. van Cleaf filed a request to the court saying that I had emailed him alleging ethical violations, which is true, but filing a request for an enumeration and asked specifically that I list which rules I alleged

Iowa Rule of Civil Procedure 1.421(1)(f), "[a] court should grant a motion to dismiss if the petition fails to state a claim upon which any relief may be granted." *U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009). In considering the motion, "the court considers all well-pleaded facts to be true." *Id.* And we review "the well-pled facts of the petition in the light most favorable to" van Cleaf, and "resolv[e] any doubts in [his] favor." *See Turner v. Iowa State Bank & Tr. Co.*, 743 N.W.2d 1, 3 (Iowa 2007). The motion to dismiss should be granted "only if the petition on its face shows no recovery under any state of facts." *Id.* (altered for readability). "Nearly every case will survive a motion to dismiss under notice pleading." *Id.* "A 'petition need not allege ultimate facts that support each element of the case of action[;]' however, a petition 'must contain factual allegations that give the defendant a "fair notice" of the claim asserted so the defendant can adequately respond to the petition.'" *Id.* (alteration in original) (quoting *Reese v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004)).

Iowa Code section 232D.204(1) and (2) provide the requirements for establishing an involuntary guardianship; it states:

> 1. The court may appoint a guardian for a minor without the consent of the parent or parents having legal custody of the minor if the court finds by clear and convincing evidence all of the following:

---

that he violated and the remedy that I was requesting. In my response, I listed the rules of [professional conduct] and said, "I believe the only appropriate remedy would be removal of Mr. van Cleaf in its entirety to allow the guardianship to go forward or dismissal of the guardianship [petition]." Because the juvenile court doesn't really have a way of completely removing the petitioner and the—and the proposed guardian and still having a juvenile guardianship go forward, that was not an option. What the judge did do in this case—because the best interests of the child should always be preserved and considered, what the judge did do is ask the court visitor . . . to contact DHS . . .

a. There is a person serving as a de facto guardian of the minor.

b. There has been a demonstrated lack of consistent parental participation in the life of the minor by the parent. In determining whether a parent has demonstrated a lack of consistent participation in the minor's life, the court may consider all of the following:

(1) The intent of the parent in placing the custody, care, and supervision of the minor with the person petitioning as a de facto guardian and the facts and circumstances regarding such placement.

(2) The amount of communication and visitation of the parent with the minor during the alleged de facto guardianship.

(3) Any refusal of the parent to comply with conditions for retaining custody of the minor set forth in any previous court orders.

2. The court may appoint a guardian for a minor without the consent of the parent or parents having legal custody of the minor if the court finds by clear and convincing evidence all of the following:

a. No parent having legal custody of the minor is willing or able to exercise the power the court will grant to the guardian if the court appoints a guardian.

b. Appointment of a guardian for the minor is in the best interest of the minor.

Taking van Cleaf's pleadings as true, he and Wildt have been the de facto guardians of J.W. for a number of years; they have taken over her physical care and are responsible for getting her to and from school, daycare, and medical appointments. The mother has gone several months at a time with either not seeing J.W. at all or having just one meal with J.W. J.W.'s father does not have legal custody of the child and has had only sporadic visits with J.W. throughout her lifetime.

At the conclusion of the hearing on the ethical issues, J.W.'s attorney argued that the court should dismiss the petition without prejudice because, as the mother's former attorney, van Cleaf and Wildt could never become guardians of J.W. "because any of their interests in the minor child and the minor child's welfare is trumped by their ethical duties to their former client." Even assuming this is a

legally correct statement—that van Cleaf's relationship to the mother as her former attorney prevents him from becoming the child's guardian—it cannot be the grounds for a dismissal under rule 1.421(1)(f) because it relies on factual allegations outside the court's consideration in deciding the motion. "A court cannot consider factual allegations contained in the motion or the documents attached to the motion. The court must ignore these facts, except those of which the court may take judicial notice." *Turner*, 743 N.W.2d at 3 (internal citation omitted).

Dismissal of the guardianship action was inappropriate; neither Iowa Rule of Civil Procedure 1.421(1)(f), the Iowa Rules of Professional Conduct, nor case law support it. Therefore, we reverse the dismissal and remand for further proceedings. On remand, the district court should determine the scope of admissible evidence in deciding the merits of the guardianship petition given that the mother is a former client of van Cleaf. Additionally, the parties may elect to litigate whether van Cleaf should be disqualified from representing himself going forward in the guardianship action.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

May, P.J., concurs; Greer, J., concurs specially.

**GREER, Judge** (concurring specially).

I concur with the well-written decision but write separately to note some concerns. First, the optics are bad here and we care about the confidentiality concerns of the mother. Van Cleaf exercised poor judgment by involving himself in a client's life in a personal way, which clearly created a difficult situation to now navigate. Knowing that attorneys may not always appreciate how their actions might impact ethical duties, there is an informal process allowing any Iowa lawyer to seek advisory opinions about an issue through the Ethics Committee of the Iowa State Bar Association . *See Iowa Supreme Court Resolution* (filed April 21, 2005). Van Cleaf might be wise to avail himself of this process going forward to get through the minefield he created. *See also* Greg C. Sisk, *Change and Continuity in Attorney-Client Confidentiality: The New Iowa Rules of Professional Conduct*, 55 Drake L. Rev. 347, 411-412 (2007) (hereinafter "Sisk") (noting Iowa Rule of Professional Conduct 32:1.6(b)(4) allows a lawyer to secure legal advice about compliance with the rules without violating disclosure of confidences).

Here, setting any good intentions involving the juvenile aside, we recognize an attorney can take unfair advantage of a client because the attorney knows the confidential information disclosed during the representation. *See Iowa Sup. Ct. Bd. of Pro. Ethics & Conduct v. Hill*, 540 N.W.2d 43, 44 (Iowa 1995) ("Clients may rightfully expect that confidences vouchsafed to the lawyer will be solely used to advance the client's interest, and will not be used to advance the lawyer's interest . . . ." (citation omitted)). And, I do not think it is clear under our rules that van Cleaf can use the confidential information learned from the mother to his advantage even though he is arguing he has a "claim" under Iowa Rule of

Professional Conduct rule 32:1.6(b)(5).[7]  *See Iowa Sup. Ct. Bd. of Pro. Ethics &*

*Conduct v. Miller*, 568 N.W.2d 665, 667 (Iowa 1997) ("We have held that an

attorney may not make use of knowledge or information acquired through a

professional relationship to the attorney's own advantage or profit." (citing *Healy*

*v. Gray*, 168 N.W. 222, 225 (1918))).  *Miller* is a case where the attorney arguably

had a claim against the company she once represented.

Finally, there is guidance available under the Restatement (Third) of the

Law Governing Lawyers § 6 (Am. Law. Inst. 2000)[8] to suggest other possible

options to protect confidential communications.  *See RFF Fam. P'ship, LP v. Burns*

---

[7] While generally the "claim" language of rule 32:1.6(b)(5) pertains to disclosure of confidential information that a lawyer believes is "reasonably necessary" to address fee disputes or to establish a defense to a criminal charge or civil claim against the lawyer, we do not see that the actual rule limits a claim to only those situations.  *See* Sisk, 55 Drake L. Rev. at 412-414.

[8] The section provides several judicial remedies "[f]or a lawyer's breach of a duty owed to the lawyer's client or to a nonclient":
  (1) awarding a sum of money as damages;
  (2) providing injunctive relief, including requiring specific performance of a contract or enjoining its nonperformance;
  (3) requiring restoration of a specific thing or awarding a sum of money to prevent unjust enrichment;
  (4) ordering cancellation or reformation of a contract, deed, or similar instrument;
  (5) declaring the rights of the parties, such as determining that an obligation claimed by the lawyer to be owed to the lawyer is not enforceable;
  (6) punishing the lawyer for contempt;
  (7) enforcing an arbitration award;
  (8) disqualifying a lawyer from a representation;
  (9) forfeiting a lawyer's fee ...;
  (10) denying the admission of evidence wrongfully obtained;
  (11) dismissing the claim or defense of a litigant represented by the lawyer;
  (12) granting a new trial; and
  (13) entering a procedural or other sanction.

*& Levinson, LLP*, 991 N.E.2d 1066, 1079, 1080–81 (Mass. 2013) (allowing use of a protective order to preserve confidentiality of privileged communications).

Because we had a limited opportunity for review at what became the motion-to-dismiss stage, I agree with the decision to reverse and remand.